```
                  United States District Court
                    District of Massachusetts
```

|  |  |
|---|---|
| GARRET JACKSON,        )<br>                       )<br>       Petitioner,    )<br>                       )<br>       v.              )<br>                       )<br>DEAN GRAY,             )<br>                       )<br>       Respondent.     )<br>                       ) | Civil Action No.<br>22-10287-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

The petition for a writ of habeas corpus currently pending before the Court arises out of the convictions of Garret Jackson ("Jackson" or "petitioner") in 2011 in the Massachusetts Superior Court for Suffolk County. Jackson was convicted of murder in the first degree, possession of a firearm without a license, possession of ammunition without an identification card and carrying a loaded firearm.

**II. Background**

    **A. Initial State Court Proceedings**

In May, 2011, Jackson was tried for: (1) murder in the first degree, in violation of M.G.L. c. 265, § 1; (2) possession of a firearm without a license, in violation of M.G.L. c. 269, § 10(a); (3) possession of ammunition without an identification

-1-

card, in violation of M.G.L. c. 140, § 129C; and (4) carrying a loaded firearm, in violation of M.G.L. c. 269, § 10(n).

The jury empanelment for the trial continued for two days. The trial judge decided to seat 16 jurors and provided each party with 16 peremptory challenges. The judge conducted group voir dire of two venire panels and individually questioned 89 jurors.

On the first day of empanelment, the prosecutor exercised 12 peremptory challenges and defense counsel exercised 11. From the first venire panel, 20 were dismissed by the judge for cause. The dismissal of two black veniremen prompted a formal objection by defense counsel to one dismissal and a negative observation as to the other but the judge did not respond to either. At the end of the first day, ten jurors had been seated. Six of those jurors were white females, one juror was an Asian-American female, one juror was an Asian-American male, and two jurors were white males.

On the second day of empanelment, two female Hispanic jurors were seated early on (Jurors 107 and 108). Defense counsel raised the first Batson-Soares challenge in reaction to the prosecution's peremptory strike of Juror 115, a 44-year-old Hispanic female.[1] Defense counsel did not specify which

---

[1] In Commonwealth v. Soares, the Massachusetts Supreme Judicial Court ("SJC") established a method for challenging peremptory

protected group was the subject of the purported discriminatory exclusion but indicated that he was making the challenge under Batson-Soares because Juror 115 was a "person of color."

The judge asked defense counsel to explain the alleged pattern to which counsel objected. Defense counsel observed that the prosecution had excused a number of young people, irrespective of race, and contended that, out of the six people of color deemed "indifferent" by the judge, the prosecution had challenged four. The judge concluded that the challenges objected to did not amount to a pattern under Batson.

After the remaining four members of the first venire panel had been excused for cause or by peremptory strikes of defense counsel, the trial judge brought in a second venire panel and conducted group questioning. Several jurors from the second panel were excused and one more prospective juror, a Hispanic male, was seated.

The second Batson-Soares challenge arose in response to the prosecution's peremptory challenge of Juror 13, a 44-year-old African-American woman. Defense counsel claimed that the Commonwealth was engaged in a pattern of challenging jurors

---

strikes on the basis of discrimination. 377 Mass. 461, 486-88, 387 N.E.2d 499, 517 (Mass. 1979), cert. denied, 444 U.S. 881 (1979). Challenges raised under Soares receive the same analysis as challenges raised under Batson v. Kentucky, 476 U.S. 79, 95 (1986). See Caldwell v. Maloney, 159 F.3d 639, 650 n.11 (1st Cir. 1998).

based on race. The judge concluded that the purported pattern did not violate the defendant's rights but nevertheless required the Commonwealth to explain their peremptory challenge of Juror 13. The prosecutor reasoned that Juror 13 had two sons similarly aged to the defendant, both of whom had been arrested, and stated that he "sensed hostility" when the juror was questioned about a detective on the witness list to whom she was related. Defense counsel responded that Juror 13 was a teacher who could be reasonable and that citing the arrests of her sons was subterfuge for racial bias. The judge concluded that the prosecution's challenge was "not based on the juror's race" and was not a Batson violation.

**B. Appeal to the Massachusetts Supreme Judicial Court**

Jackson directly appealed his conviction on multiple grounds. Pertinent to the pending petition, he asserted that the trial judge erred by allowing the Commonwealth's peremptory challenges of two prospective jurors over the defendant's objections under Batson v. Kentucky, 476 U.S. at 95, and Commonwealth v. Soares, 377 Mass. at 486. The defendant contended that those peremptory challenges were improper under Batson's three-step burden-shifting analysis. See Batson, 476 U.S. at 94- 95; Soares, 377 Mass. at 489-491.

Under Batson, the challenging party must first establish a prima facie case of purposeful discrimination on the basis of

-4-

the juror's protected class. Batson, 476 U.S. at 93-94. If this showing is satisfactory, the burden shifts to the striking party to provide a "group-neutral" explanation for exercising the peremptory strike. See Commonwealth v. Oberle, 69 N.E.3d 993, 999-1000 (Mass. 2017). If the judge determines that the proffered explanation is "adequate" and "genuine," the strike is deemed proper. Commonwealth v. Maldonado, 439 Mass. 460, 464 (Mass. 2003).

During empanelment, Jackson raised a Batson-Soares challenge to the Commonwealth's peremptory strike of Juror 115, a Hispanic female. Jackson contends that the trial judge abused his discretion by failing to find that a prima facie case of discrimination was established. Jackson also raised a Batson-Soares challenge to the Commonwealth's peremptory strike of Juror 13, a black female. He contends that the trial judge abused his discretion by accepting the Commonwealth's race-neutral explanation as sufficient.

**C.  Decision by the Massachusetts Supreme Judicial Court**

The SJC concluded that the trial judge did not abuse his discretion in addressing either Batson-Soares challenge. With respect to Juror 115, the SJC first observed that Jackson's objection to the prosecution striking "persons of color" did not refer to a sufficiently defined group. Commonwealth v. Prunty, 462 Mass. 295, 307 n.17, 968 N.E.2d 361 (Mass. 2012) ("The test

in [Batson] does not apply to challenges to members of all minority ethnic or racial groups lumped together, [it applies to] particular, defined groupings in the community.") (internal quotations omitted).

Focusing its analysis of Juror 115's Hispanic heritage, the SJC concluded that an inference of discrimination was unwarranted. The SJC reached that conclusion by highlighting a number of factors, including: 1) neither the victim nor the defendant was Hispanic; 2) the strike rate for "indifferent" Hispanic jurors was not glaringly higher than the strike rate for "indifferent" non-Hispanic jurors; and 3) there were legitimate, neutral grounds for striking Juror 115, specifically that she had just finished one year of probation.

With respect to Juror 13, the SJC concluded that the trial judge exercised appropriate discretion at step three of its Batson analysis. The trial judge found the Commonwealth's explanation adequate and the defendant's rebuttal unavailing. Noting the deference owed to trial judges when making determinations of credibility, the SJC found that there was no abuse of discretion.

    D.  **Federal Court Proceedings**

In December, 2021, Jackson filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his state court convictions of murder in the first degree,

possession of a firearm without a license, possession of ammunition without an identification card and carrying a loaded firearm. He contends that the court erred by not requiring the Commonwealth to give a race-neutral reason for challenging Juror 115. He further claims that the trial judge erred by accepting the Commonwealth's explanation for striking Juror 13 as adequate and genuine. Jackson petitions this court to vacate his sentence on all counts of conviction and to remand the case for a new trial.

### III. Pending Motions

#### A. Habeas Standard

A federal court conducting habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). State court factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). The resolution of state law issues by state courts is binding upon federal courts. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

A federal court's habeas review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See 28 U.S.C. § 2254. Under AEDPA, a petitioner must demonstrate that the final state adjudication:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme

> Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see Yacouba-Issa v. Calis, 22 F.4th 333, 335 (1st Cir. 2022). When the state court has adjudicated the habeas claim on the merits, AEDPA mandates a "highly deferential federal court review". Zuluaga v. Spencer, 585 F.3d 27, 29 (1st Cir. 2009).

A state court decision is "contrary to" clearly established Supreme Court precedent when it arrives at a conclusion of law opposite to that reached by the Supreme Court or when it resolves a case differently than the Supreme Court has with respect to materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000); see Cullen v. Pinholster, 563 U.S. 170, 182 (2011) ("a federal court must consider whether the decision applies a rule that contradicts [established] law and how the decision confronts [the] set of facts that were before the state court.") (internal quotations omitted).

A state court decision is based on an unreasonable determination of the facts when the decision is "objectively unreasonable in light of the evidence presented in the state-court proceeding." Yacouba-Issa v. Calis, No. 16-cv-12124-ADB, 2019 WL 133292, at *5 (D. Mass. Mar. 25, 2019) (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).

### B. **Batson** Standard

Peremptory challenges are presumed proper. Maldonado, 439 Mass. at 463. This presumption can be rebutted by a sufficient showing that there is a pattern of discrimination against a cognizable group that will likely lead to group member exclusion. See Commonwealth v. Curtiss, 424 Mass. 78, 80, 676 N.E.2d 431, 433 (Mass. 1997).

Establishing a prima facie case for discrimination is the first step in the Batson burden-shifting analysis. See Snyder v. Louisiana, 552 U.S. 472, 476 (2008)("Batson provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race.") The burden for meeting this requirement is "not onerous," however, it requires the petitioner to come forward with facts, "not just numbers alone." Aspen v. Bissonnette, 480 F.3d 571, 577 (1st Cir. 2007). In assessing the sufficiency of the prima facie case presented, trial judges should consider "all relevant circumstances," and use their wisdom and experience to determine whether an inference of discrimination may be drawn. See Brewer v. Marshall, 119 F.3d 993, 1004 (1st Cir. 1997); see Johnson v. California, 545 U.S. 162, 163 (2005).

If such an inference can be drawn, the prosecutor must provide a race-neutral explanation for striking the juror. Batson 476 U.S. at 97. If an explanation is given, the trial

-9-

judge must assess whether it is adequate and genuine. Maldonado, 439 Mass. at 460, 464.  An explanation is *adequate* if it is "clear and reasonably specific [to the juror]". Id. at 464-465 (internal quotation omitted).  It is *genuine* if "it is in fact the reason [for the strike.]" Id. (internal quotation omitted).

The determination of the trial judge rests largely on the credibility of the prosecutor and demeanor of the juror. Id. at 477.  Because the inquiry is fact-intensive, the judge's conclusion should be afforded deference by an appellate court unless clearly erroneous. Foster v. Chatman, 578 U.S. 488, 500 (2016) (quoting Snyder, 552 U.S., at 477).  A federal habeas court must afford even greater deference, reversing only if the decision was an unreasonable application of law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

**B. Application**

Jackson brings this petition on two grounds.  First, he contends that the Massachusetts state courts erred by refusing to require the prosecution to provide a race-neutral reason for striking Juror 115. Second, he contends that the Massachusetts state courts erred by accepting the prosecution's explanation for striking Juror 13 as adequate and genuine.  He submits that those decisions were contrary to or involved an unreasonable application of federal law, or otherwise were based on an unreasonable determination of the facts.

### 1. Juror 115

Jackson contends that the SJC erred by upholding the determination of the trial judge that there was no prima facie case of discrimination with respect to Juror 115.

At the time of defense counsel's first Batson-Soares challenge, the prosecutor had stricken three of five Hispanic potential jurors (60%) and ten of thirty-three non-Hispanic potential jurors (30%). Jackson contends that the discrepency constitutes a pattern of strikes of Hispanic jurors that raises an inference of discrimination. Although the burden on defense counsel to establish a prima facie showing of discrimination is not substantial, "numbers considered in isolation are inconclusive." United States v. Mensah, 737 F.3d 789, 797 (1st Cir. 2013). In accord with the SJC's conclusion, this Court finds that such numbers do not independently establish a prima facie case for discrimination.

Furthermore, the record contains reasonable, neutral grounds for peremptory strikes of other Hispanic veniremen. The SJC carefully considered and determined the propriety of those strikes. Juror 119, a Hispanic male and the first Hispanic individual to be stricken, indicated during voir dire that he had never served on a jury and did not feel he could do so. He also alluded to the defendant's possible possession of a firearm, suggesting that he might have been fearful about

serving. Juror 51, an Hispanic male and the second Hispanic individual to be stricken, indicated that he went "way back" with the defense paralegal's brother, an individual convicted of murder. The prosecutor had initially moved to excuse that individual for cause but the judge declined to do so.

Looking to the additional relevant circumstances, this Court agrees with the SJC that the trial judge acted well within his discretion under Batson. See Commonwealth v. Sanchez, 151 N.E.3d 404, 424-425 (2020) (listing appropriate factors to consider when deciding whether a prima facie case for discrimination has been made). There were substantial, neutral reasons for striking Juror 115. For instance, she had recently been convicted of disturbing the peace and had two children who are about the same age as the defendant. Further, neither the defendant nor the victim was the same ethnicity as Juror 115. Id. at 425; see also Powers v. Ohio, 499 U.S. 400, 416 (1991) (recognizing shared racial identity between the defendant and excused juror as a potential indicia of discrimination). Finally, the prosecutor made no requests during the voir dire process that were indicative of racial bias.

### 2. Juror 13

Jackson's contentions with respect to Juror 13, an African-American woman, are relative to the third step in the Batson analysis. He submits that the trial judge improperly accepted

the prosecutor's race-neutral reason for striking Juror 13 as adequate and genuine, and that the SJC was mistaken in upholding that determination.

The prosecutor offered three reasons for striking Juror 13: 1) she had two sons the same age as the defendant, 2) those sons had been arrested, and 3) there was reason to believe that she harbored some hostility toward a specific police witness.  The trial judge focused on the first two points and did not substantially rely upon the third.  The trial judge determined that those explanations were reasonably specific to Juror 13 and that it was not inappropriate to strike a juror whose children had been arrested and prosecuted because such a person might harbor bias against the Commonwealth.  The SJC found no grounds to overturn that determination, observing that Juror 13 was the only "indifferent" juror whose arrested family members were her children.

Jackson first contends that such an explanation is not even race-neutral.  He submits that involvement in the criminal justice system is a pretext for race because a higher percentage of African Americans have interactions with the criminal justice system than whites.  In view of controlling Supreme Court and First Circuit Court of Appeals precedent, this Court declines to take that position. See Hernandez v. New York, 500 U.S. 352, 360 (1991) ("Unless a discriminatory intent is inherent in the

prosecutor's explanation, the reason offered will be deemed race neutral"); U.S. v. Charlton, 600 F.3d 43, 53-54 (1st Cir. 2010) (upholding juror dismissal where juror's son had been incarcerated).

Furthermore, petitioner suggests that such an explanation, even if neutral, was inadequate. He observes that the prosecutor's explanation suggested Juror 13's sons had been prosecuted when, in fact, they had only been charged. This Court concurs with the SJC that the difference, while notable, is immaterial. Jackson next observes that the charges in question were trivial but he cites no caselaw in support of the proposition that there is some de minimis level of alleged criminal conduct that necessarily renders an interaction with the criminal justice system immaterial. Thus, it cannot be said that the SJC misapplied pertinent law.

Jackson finally contends that the explanation of the prosecutor was in fact a pretext because he chose not to challenge other jurors who had more extensive involvement with the criminal justice system. This Court is not persuaded. As the SJC noted, of those venire persons deemed "indifferent", Juror 13 was the only individual whose arrested relatives were her children and those children were about the same age as the petitioner. Especially given the deference afforded to trial judges in such a fact-intensive determination, this Court has no

quarrel with the SJC's decision that the trial judge acted appropriately.

## ORDER

For the foregoing reasons, Jackson's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Docket No. 1) is **DISMISSED**.

**So ordered.**

                                                  /s/ Nathaniel M. Gorton  
                                                  Nathaniel M. Gorton  
                                                  United States District Judge

Dated:  May 2, 2023